JAMES D. TYLER, administrator, *vs.* ROBERT B. WHEELER, administrator.

Worcester.    October 5, 1893. — November 29, 1893.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Will — Husband and Wife — " Written Consent " to Will — Estoppel — Waiver — Practice.*

The signature of a husband, who has been named as the executor of his wife's will, to the petition for his appointment as executor and to his official bond, is not a " written consent " to the will, within the meaning of Pub. Sts. c. 147, § 6.

The acceptance by a husband of the appointment of executor of his wife's will, to which he has not assented in writing, and by which nothing is devised to him, does not estop him from claiming his share of her personal estate, under the Pub. Sts. c. 135, § 3, and c. 147, § 6, or amount to a waiver of his claim.

*It seems,* that an administrator *de bonis non* with the will annexed of an estate cannot maintain an action at law against the administrator of the estate of the executor of the will, in the absence of an account in the Probate Court, for assets which the latter appropriated and assumed to administer, and which cannot be traced or identified as a part of the testator's estate.

CONTRACT, by the administrator *de bonis non* with the will annexed of the estate of Jane F. Wheeler, against the administrator of the estate of Reuben A. Wheeler, to recover the sum of $2586.68. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, in substance as follows.

Reuben A. Wheeler was the husband of Jane F. Wheeler, who died on September 14, 1873, leaving a will, of which she appointed her husband as executor, to whom she devised nothing. She left no issue surviving her. Her husband duly petitioned for the probate of the will, and his appointment as executor thereof. Upon the filing of his official bond, he was duly appointed and qualified as such executor.

Within one year after his appointment as executor, he paid all the specific legacies to the several legatees, according to the terms of the will.

He never paid the residuary legatees under the will, except as hereinafter stated.

On March 25, 1875, he paid to Paul A. Randall, who was then the duly appointed guardian of the residuary legatees, who were

then minors, the sum of $1163.12, and Randall then gave to him a receipt therefor, stating it to be in full for the amounts due his wards under the provisions of the will, and releasing the executor from all claims which he might have against him as such guardian.

This sum of $1163.12 was one half of the remaining balance of the personal estate of Jane F. Wheeler, then in the hands of the executor. Randall had no authority from the Probate Court to compromise the claims of his wards to the legacies given them under the will.

At the time of the payment of this sum to Randall, Reuben A. Wheeler stated to Randall that the law gave him one half, and he should keep that, for he did not know how much he might need.

Reuben A. Wheeler never filed an inventory of the estate of Jane F. Wheeler, and never rendered any account thereof to the Probate Court. He died intestate in the fall of 1891.

Except as aforesaid, Reuben A. Wheeler never assented in writing to the provisions of the will. Randall never made any further demand upon Reuben A. Wheeler, as executor, for the payment of the balance of legacies due to his wards.

On November 4, 1891, the defendant was appointed and duly qualified as administrator of the estate of Reuben A. Wheeler. Subsequently the plaintiff was appointed and qualified as administrator *de bonis non*, with the will annexed, of the estate of Jane F. Wheeler, and thereafter he caused the defendant, as administrator, to be cited into the Probate Court to file an account for Reuben A. Wheeler, as executor. Such account was filed and allowed, including the sum of $128 for the latter's services as executor.

The plaintiff duly made demand upon the defendant that all balances and property of the estate of Jane F. Wheeler, not duly paid over under her will, be paid and delivered to the plaintiff; and the defendant refused to pay over any property or estate to the plaintiff.

*F. P. Goulding & J. Smith*, for the defendant.

*H. Parker*, for the plaintiff.

KNOWLTON, J. The principal question at issue is whether the defendant's intestate, after having accepted the appointment

of executor of his wife's will, was entitled to one half of her personal estate, under Pub. Sts. c. 135, § 3, and c. 147, § 6. The last mentioned statute is as follows: "A married woman may make a will in the same manner and with the same effect as if she were sole, except that such will shall not, without the husband's written consent, operate to deprive him of his tenancy by the curtesy in her real estate, or more than one half of her personal estate." The defendant's intestate gave no written consent, and there is no doubt under the law that before the will was presented for probate it was a will which could take effect only upon one half of the personal estate of the testatrix after the other half had been reserved for her husband, who was entitled to it by force of the statute. The plaintiff contends that, by applying for an appointment and giving a bond as executor, the husband lost his right to the share which he should otherwise have received. The grounds of this contention are in substance two: first, that his signature to the petition for the appointment and to the bond was a written consent to the will; and, secondly, that his conduct in assuming the position of executor was an election that the will should be given full effect, and was a waiver of his rights under the statute, or an estoppel against his claim. First, did his action constitute a written consent to the will? Manifestly not the kind of written consent contemplated by the statute, for it is evident that what is meant is a formal, express consent in writing. Conceding that consent may be given informally if it is in writing and its meaning is clear, we have to consider the nature of his action in accepting the trust of executor. In the first place, it is to be remembered that the will was legal and valid, except that it took effect only upon a part of the estate of the testatrix. It was the duty of the person appointed in it as executor to present it for probate, to take out letters testamentary, and to administer upon the estate. If some other person than the husband had been named in the will as executor, he would have presented a petition and signed a bond, as the husband did. In his petition he would have set forth truly that the testatrix left a will, and he would have signed a bond agreeing to administer the estate "according to law and the will of the testator." This would have meant a will which did not affect that portion of her estate

which the law gave her husband. To administer according to law and the will of the testator, would have meant to turn over to the husband his share, and to dispose of the remainder under the will. There would have been no implication that it would deprive the husband of his share, or that it was a will which could have any more extended operation than that permitted to it under the law. We see no reason why the husband's act should have any different meaning in this respect than that of any other person who might have been appointed executor. He took no beneficial interest under the will. Mere probate of the will, whether on his petition or on that of another person, could not affect his legal rights. There was nothing inconsistent in his proving the will, and at the same time claiming his share of the property which was not affected by it. His performance of his official duty as executor was entirely apart from consent to the will for the purpose of giving it an effect which the law did not otherwise give it. It was a recognition of it as a valid instrument to the extent and for the purposes for which it was made valid by the statute, and not for another and different purpose. We are of opinion, therefore, that his signature in these official proceedings was not a written consent to the will within the meaning of Pub. Sts. c. 147, § 6.

Much of what we have said is applicable to the plaintiff's contention that the defendant's intestate is estopped from claiming his share by reason of an election to treat the will as valid. The doctrine is well established, that one who elects to take a devise or legacy under a will is estopped from setting up a claim which would defeat the operation of the will. *Hyde* v. *Baldwin*, 17 Pick. 303. *Smith* v. *Smith*, 14 Gray, 532. *Smith* v. *Wells*, 134 Mass. 11. The reason of this rule is, that it would be unjust for him to claim property which the will assumes to dispose of, and which was treated by the testator as a part of his estate on which he relied to carry out his intentions expressed in the will, and at the same time to take under the will that which very likely would not have been given if the testator had supposed he would make such a claim. If by his claim he takes out of the estate a part of that which was treated by the will as belonging to it, it is reasonable that he should leave for those whose shares are diminished by his conduct the share which he would

have received if the estate had not been diminished by his act. If he elects to take that share under the will, he is justly estopped from making a claim against the will. But this rule has no application to a case where the claimant takes no interest, legal or equitable, under the will. In the present case, the testatrix left nothing by her will to her husband. The allowance which was made to him by the Probate Court for his services as executor was only a fair compensation. We are therefore of opinion, that no election was made which estopped the defendant's intestate from claiming his share of the estate, or which amounted to a waiver of his claim.

The case of *Smith* v. *Wells, ubi supra,* was decided on the ground that the husband had received and held a valuable property under the will, and was thereby estopped from making a claim at variance with any of the provisions of the will.

We do not intimate that, if the law on this part of the case were different, the administrator *de bonis non* could recover in this form of action, in the absence of an account in the Probate Court, for assets which the executor appropriated and assumed to administer, and which could not be traced or identified as a part of his wife's estate. A probate account cannot be settled in an ordinary action at the common law, and in the present case it is agreed that the account as allowed does not correctly show the amount for which the defendant would be chargeable if the plaintiff's theory of the law were adopted. See *Brooks* v. *Brooks,* 11 Cush. 18; *Munroe* v. *Holmes,* 9 Allen, 244; *S. C.* 13 Allen, 109; *Prentice* v. *Dehon,* 10 Allen, 353; *McLane* v. *Curran,* 133 Mass. 531; *New England Trust Co.* v. *Eaton,* 140 Mass. 532; *Cobb* v. *Kempton,* 154 Mass. 266.

*Judgment for the defendant.*